UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA Y. COTTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-313 RLY-TAB |
| | ) | |
| GROUP ATHLETICA, LLC, a division of | ) | |
| REEBOK INTERNATIONAL, LTD., | ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Melissa Y. Cotton, brings this employment discrimination suit against her former employer, Group Athletica, LLC, a division of Reebok International, Ltd. ("Group Athletica"). Plaintiff alleges that on July 16, 2003, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of sexual harassment. On August 15, 2003, Plaintiff settled her charge of discrimination with the EEOC and Group Athletica. Ten days later, Group Athletica terminated Plaintiff. In her Complaint, Plaintiff alleges that Group Athletica retaliated against her by terminating her employment, and breached the settlement agreement which resolved Plaintiff's charge of discrimination. Group Athletica now moves for summary judgment. For the reasons explained below, the court **DENIES** its motion.

**I.  Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

**II.    Background**

    **A.    Plaintiff's Employment at Group Athletica**

1.   Group Athletica produces and distributes athletic apparel at its facility in Indianapolis, Indiana (the "Facility"). (Affidavit of Sherry Hedge ("Hedge Aff." ¶ 2 ).

2. Group Athletica hired Plaintiff to work in the Indianapolis facility effective November 11, 2002.  (Deposition of Melissa Cotton ("Cotton Dep.") at 48-49, 121-122, Ex. 18).

3. After a brief initial assignment in Authentics, Plaintiff worked the second shift in the Fold and Pack area.  (Cotton Dep. at 48-49).

4. In Group Athletica's Fold and Pack area (also called Value Added Services, or "VAS"), goods are tagged, folded, hung on clothes hangers, and packaged before being sent to shipping.  (Deposition of Jason Dove ("Dove Dep.") at 7:8-12).

5. During Plaintiff's non-probationary employment at Group Athletica, Dawn Campbell was the Senior Department Manager and Jason Dove was the Assistant Manager of Value Added Services.  (Dove Dep. at 6, 10).

6. The chain of command also included Floor (or Shift) Managers (one per shift); Unit Managers (three per shift); Team Leaders (one per Unit Manager); and associates.  (Dove Dep. at 20:20-25, 21:1-24, 22:16-21, 23:14-25, 24:1-2, 35:14-24).

7. At that time, Plaintiff's Shift Manager was Kathy Rutland.  (Declaration of Melissa Cotton ("Cotton Dec." ¶ 7).

8. Plaintiff took a voluntary layoff from Monday, February 3, 2003, and returned to work on Monday, March 31, 2003.  (Cotton Dep. at 54-55; Hedge Aff. ¶ 9).

    **B.**    **Group Athletica's Attendance Policy and Practice**

9. Group Athletica's Indianapolis facility attendance policy was based on "occurrences" for unexcused absences from work. (Cotton Dep. 66:11-13, Dove Dep. 57:8-16, Ex. 3).

10. An unexcused absence was one not covered by earned sick/personal time, by vacation time, or by making up the time within the same week with approval of the Floor Manager, the Assistant Manager (Dove), or the Senior Department Manager (Campbell). (Deposition of Dawn Campbell ("Campbell Dep.") at 7:21-25, 37:5-13, 39:5-23.

11. A full-day unexcused absence counted as one occurrence. (Dove Dep. at 57, 66, Ex. 3).

12. An unexcused late arrival or early departure counted as one-half occurrence if the total absence was for less than half the shift. (Dove Dep. at 64, 66).

13. If an employee arrived late and left early on the same day, Group Athletica only assessed one-half occurrence as long as the total absence was for less than half the day's shift. (Dove Dep. at 66-67).

14. Employees were allowed a five-minute grace period before they were subject to being charged with a late arrival or early departure. (Dove Dep. at 65-66).

15. Under the discipline policy, employees who had completed their 90-day Introductory (i.e, Probationary) Periods were subject to discipline or to advancement by a step in the disciplinary process if they accumulated occurrences totaling five or more within a rolling six-month period. (Deposition of Sherry

Hedge ("Hedge Dep.") at 22-23, 43-44, 53, Ex. 3).

16. Each time an employee had an attendance infraction, company practice was to add up total occurrences (both whole and half) for that employee during a rolling six-month period ending with the date of the latest occurrence to determine whether the employee was subject to a Step in the disciplinary process. (Hedge Dep. at 22-23).

17. The disciplinary steps related to attendance were: Step One (verbal counseling), Step Two (written warning), Step Three (suspension), and Step Four (termination of employment). (Cotton Dep. at 69; Dove Dep. at 56-57, Ex. 3).

**C.     Plaintiff's Attendance Issues**

18. As previously stated, Plaintiff returned from her voluntary lay off on March 31, 2003, and resumed her second shift position in the Fold and Pack Department. (Cotton Dec. ¶¶ 15, 19).

19. Plaintiff's Shift Manager was Betty Hall, and her Unit Supervisor was Jack Haymaker. (Cotton Dec. ¶¶ 19, 63).

20. On Thursday, June 12, 2003, Plaintiff had emergency oral surgery to remove four wisdom teeth. (Cotton Dec. ¶ 58).

21. On Friday, June 13, 2003, Plaintiff went to work and spoke with Hall. (Cotton Dec. ¶ 63).

22. Plaintiff showed Hall the doctor's note she received from her dentist and a bottle of pain medication that had been prescribed to her. Hall told Plaintiff to take as

much time off work as she needed to heal from the surgery. (Cotton Dec. ¶ 64).

23. Plaintiff did not return to work until Tuesday, June 17, 2003. (Cotton Dec. ¶ 66).

24. On June 20, 2003, Plaintiff took a floating holiday which was approved by Rutland. (Cotton Dec. ¶ 27, Ex. 6).

25. On June 26, 2003, Rutland issued disciplinary notices for a written warning and a suspension. (Cotton Dec. ¶ 70, Ex. 7). The written warning was for Plaintiff's absence on June 16, 2003, and the suspension was for Plaintiff's absence on June 20, 2003. Plaintiff later learned that Group Athletica had assessed her with a verbal warning[1] for her absences on June 12 and 13. (Cotton Dec., Ex. 7).

### D. Plaintiff's Sexual Harassment Allegations

26. On July 8, 2003, Plaintiff wrote a letter to Human Resources Director Sherry Hedge informing her that she was being sexually harassed by Haymaker. (Cotton Dec. ¶ 28, Ex. 1).

27. The following day Plaintiff was transferred to a different unit supervised by Andre Cole. (Cotton Dec. ¶ 33).

28. Haymaker continued to harass Plaintiff. (Cotton Dec. ¶ 34).

29. On July 15, 2003, Plaintiff informed Hall of Haymaker's continued harassment.

---

[1] The Step One verbal warning for attendance infractions was based on the following unapproved absences: April 29 (absent – one occurrence); April 30 (left early – one-half occurrence); May 5 (left early – one-half occurrence); May 19 (left early – one-half occurrence); May 20 (arrived late – one-half occurrence); June 3 (absent – one occurrence); June 12-13 (absent – one occurrence). As Plaintiff did not respond to this fact advanced by Group Athletica, the court assumes it is true for purposes of this motion.

(Cotton Dec. ¶ 35).

30. Not satisfied with Hall's response, Plaintiff filed a charge of discrimination with the EEOC the following day. (Cotton Dec. ¶ 37, Ex. 2).

31. On July 17, 2003, Hedge received Plaintiff's EEOC charge. (Hedge Dep. at 90, Ex. 6).

32. On July 18, 2003, Plaintiff wrote another letter to Hedge which stated that Haymaker had continued to engage in inappropriate behavior. (Cotton Dep. at 119; Cotton Dec. ¶¶ 44-45, Ex. 3).

33. On that same day, Group Athletica suspended Haymaker pending investigation. (Hedge Dep. at 97-98, Ex. 6).

34. Plaintiff was given two days off work (July 17 and 18, 2003) without penalty. (Cotton Dep. at 126-27).

35. On July 18, 2003, Plaintiff met with Hedge and Campbell, who offered to move Plaintiff to the first shift. Plaintiff accepted. (Cotton Dec. ¶ 45).

36. Effective Monday, July 21, 2003, Group Athletica transferred Cotton to the first shift of the Fold and Pack Department. (Hedge Aff. ¶ 12).

37. On that same day, Group Athletica terminated Haymaker's employment for violation of the company's sexual harassment policy. (Hedge Dep. at 97-98, Ex. 6).

**E.   Plaintiff's Settlement**

38. On August 13, 2003, Plaintiff signed a Predetermination Settlement Agreement

between herself, the EEOC, and Group Athletica, which resolved her July 16, 2003 EEOC charge of discrimination. (Cotton Dep. at 137, Ex. 22; Cotton Dec., Ex. 8).

39. Under section 3 of the Settlement Agreement, Group Athletica promised to do the following:

    a. Pay [Plaintiff] three (3) day's pay totaling the sum of $207.60, less standard applicable taxes . . .

    b. To remove references to [Plaintiff's] three day suspension of June, 2003 from her personnel file.

(Cotton Dep. at 137, Ex. 22; Cotton Dec., Ex. 8).

40. Thereafter, Group Athletica paid Plaintiff $207.60 as required by the Negotiated Settlement Agreement (less taxes), which represented 24 hours of pay. (Cotton Dep. at 138-39, 142-43, Ex. 24).

41. In addition, Hedge noted "6/20/03 removed occurrence per Legal Agreement" on Plaintiff's Attendance History and wrote across the face of Plaintiff's June 20, 2003, disciplinary report: "Removed per legal agreement 8/8/03." (Hedge Dep. at 111, 138, Exs. 9, 18).

42. According to Group Athletica, this left Plaintiff at Disciplinary Step Two for attendance, based on the occurrences she had accumulated from April 29, 2003 to June 16, 2003. (Cotton Dep. at 96, 139-41, Exs. 15, 23).

43. Plaintiff was not represented by counsel at the time she signed the Settlement Agreement. (Cotton Dec. ¶ 80).

44. She understood the Settlement Agreement to mean that it would remove all

8

    documents and disciplinary notices relating to her suspension – i.e., June 12, 13, 16, and 20, 2003.  (Cotton Dec. ¶ 81).

### F. Plaintiff's Initial Experience on First Shift

47. Shortly after Plaintiff started on first shift, Dove commented, "Don't think you got on first shift because of the EEOC and the sexual harassment, don't think that's the reason you got on first shift."  (Cotton Dec. ¶ 48).

46. Co-worker, Amber Brookins, and Team Leader Cory Smith, told Plaintiff that supervisors were making comments relating to her complaint of sexual harassment.  (Cotton Dec. ¶ 54).  Brookins told Plaintiff that Diane Nelson, a Team Leader, said Plaintiff was put on first shift "because of sexual harassment."  (Cotton Dec. ¶ 55).  Smith told Cotton that he knew about her sexual harassment complaint.  (Cotton Dec. ¶ 56).  Team Leaders on the first shift, including Nelson and Kathy Everidge, told Brookins that Plaintiff got a male employee fired on night shift because she was being "hot."  (Deposition of Amber Brookins ("Brookins Dep.") at 34-37, 40-41, 43).  Team Leaders Nelson and Everidge called Plaintiff the "slut of the night shift."  (Brookins Dep. at 37).  Everidge also referred to Plaintiff as a "tramp."  (Brookins Dep. at 40).

### G. Plaintiff's Attendance in August 2003

47. During the week of August 11-15, 2003, the scheduled hours for the Fold and Pack

first shift were as follows: from 5:00[2] a.m. to 4:00 p.m. except for Friday, August 15, when the schedule was from 6:00 a.m. to 3:00 p.m. (Dove Dep. at 134-35, Ex. 7; Affidavit of Jason Dove ("Dove Aff.") ¶ 6).

48. Group Athletica alleges the first shift schedule for Monday, August 18, 2003, was 6:00 a.m. to 4:00 p.m. (Dove Aff. ¶ 7). Plaintiff alleges the schedule for that day was from 6:00 a.m. to 3:00 p.m. (Hedge Dep., Ex. 28, Attachment J).

49. Group Athletica alleges that Plaintiff was either late, left early, or was absent the week of August 11-15, 2003. Group Athletica further alleges Plaintiff was late and left early on August 18, 2003, and absent on August 19, 2003. (Campbell Dep. at 91-92, Ex. 7; Dove Dep. at 170-73, 175-77, Exs. 18, 20; *see also* Cotton Dep., Exs. 27, 32).

50. Accordingly, Dove terminated Plaintiff from her position on August 25, 2003, for excessive attendance occurrences. (Dove Dep. at 143-44).

**H.     Plaintiff's Second EEOC Charge of Discrimination**

51. On September 3, 2003, Plaintiff filed a second charge of discrimination with the EEOC, alleging sex discrimination and retaliation. (Cotton Dep. at 19, Ex. 3; Cotton Dec. ¶ 92, Ex. 11).

52. Group Athletica explained its reason for terminating Plaintiff to the EEOC as follows:

---

[2] Plaintiff agrees, except she alleges that the hours for Monday, August 11, 2003, were from 6:00 a.m. to 3:00 a.m. (Hedge Dep., Ex. 28, Attachment J).

> Ms. Cotton missed a full day of work on August 11. This was Ms. Cotton's fifth occurrence in a 6-month period and triggered another 3-day suspension. . . On August 12, Ms. Cotton clocked in 54 minutes late for work, and on August 13, clocked in 47 minutes late for work. These two tardys equaled yet another occurrence under the attendance policy; this was her seventh occurrence in a six-month period, which triggered Ms. Cotton's termination. Before the Company had the opportunity to administer the discipline caused by her absences that week, Ms. Cotton also clocked in 49 minutes late for work on August 14 and 40 minutes late on August 15. She was also tardy on Monday, August 18.

(Hedge Dep. at 158, Ex. 28 at 8).

53. On February 13, 2004, Plaintiff filed this lawsuit.

## III. Discussion

### A. Retaliation

To succeed on her claim of retaliation under the direct method of proof, Plaintiff must establish that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Lang v. Illinois Dep't of Children and Family Serv.*, 361 F.3d 416, 418 (7th Cir. 2004). The parties do not dispute that Plaintiff has engaged in protected activity by filing her charges of discrimination with the EEOC, or that her termination constituted an adverse employment action. Instead, Group Athletica asserts that Plaintiff has produced no evidence under the direct method that would establish a causal link between her complaints of discrimination and her termination.

The Seventh Circuit holds that a close temporal proximity between the plaintiff's

11

protected activity and the adverse employment action "provides evidence of causation," and "may permit a plaintiff to survive summary judgment provided there is also other evidence that supports the inference of a causal link." *Id.* at 419 (citations omitted).

      The court finds Plaintiff has adduced evidence of a causal link. First, the timing of her termination – approximately five weeks after she filed her June 16, 2003 charge of discrimination, 10 days after the parties signed the Settlement Agreement, and five days after she picked up the settlement check – provides circumstantial evidence that Plaintiff's EEOC charge and her termination were related. Further, the comments of Plaintiff's first-shift co-workers and Team Leaders could lead to the conclusion that Group Athletica's supervisors were openly discussing her transfer in a negative light. Finally, Plaintiff's argument that the Settlement Agreement was unfairly executed by Group Athletica in that it did not remove the occurrences she received in June 2003 gives some credence to the idea that Group Athletica "set her up" for an imminent dismissal. Her interpretation of the Settlement Agreement is not unreasonable given the fact that it did not specify the occurrence(s) to be removed from her record. It merely stated that Group Athletica would remove "references to her suspension." For these reasons, the court finds Plaintiff has established a prima facie case of retaliation.

      Group Athletica's proffered reason for terminating Plaintiff is her poor attendance record. Plaintiff counters that this reason is not legitimate. The parties dispute her scheduled hours for the week of August 11-15, 2003, and for August 18-19, 2003. In addition, Group Athletica has no records of the weekly schedules for the month of August

12

2003.  The court has reviewed the parties' submissions and finds them inconclusive.  Since the court is not able to conclude what her attendance was during those weeks, the court cannot determine whether Group Athletica was justified in terminating her on those grounds.  For these reasons, Plaintiff's retaliation claim survives summary judgment.

### B. Breach of the Settlement Agreement

"A predetermination settlement agreement is a contract between a complaining employee and the allegedly discriminatory employer that is reached with the aid of the EEOC prior to an EEOC determination of the merits of the complaining employee's charge of discrimination."  *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir. 1986).  Construction of such an agreement is governed by principles of federal common law.  *Eatmon v. Bristol Steel & Ironworks, Inc*., 769 F.2d 1516-17 (11th Cir. 1986).  Where the language of the predetermination settlement agreement is ambiguous, the court may consider extrinsic evidence.  *Brewer*, 790 F.2d at 1519.

As previously stated, section 3 of the Predetermination Settlement Agreement between the EEOC, Group Athletica and Plaintiff required Group Athletica  "[t]o remove references to [Plaintiff's] three day suspension of June 2003 from her personnel file."  Group Athletica removed only the occurrence for her absence on June 20, 2003.  Plaintiff interpreted section 3 as requiring Group Athletica to remove all occurrences associated with her absences for oral surgery in June 2003 which led to her suspension.

The court finds the phrase "[T]o remove references to" is ambiguous because it is subject to alternate reasonable meanings.  Looking at the extrinsic evidence, a reasonable

jury could conclude that in signing the Settlement Agreement, all attendance occurrences associated with Plaintiff's oral surgery – June 12, 13, and 16, 2003 – would be removed from her attendance record. This is especially true given Plaintiff's allegation that Hall told her that she could take as much time off as necessary to recover from her oral surgery. For these reasons, Plaintiff's breach of contract claim survives summary judgment.

## IV.   Conclusion

Viewing the evidence in the light most favorable to Plaintiff, the court finds genuine issues of material fact remain on Plaintiff's retaliation and breach of contract claims. Accordingly, the court **DENIES** Group Athletica's Motion for Summary Judgment.

**SO ORDERED** this  7th  day of September 2005.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Ellen E. Boshkoff
BAKER & DANIELS
eeboshko@bakerd.com

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Susan W. Kline
BAKER & DANIELS
swkline@bakerd.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com