UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| MELISSA Y. COTTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-0313-RLY-TAB |
| | ) | |
| GROUP ATHLETICA, LLC, a division of | ) | |
| REEBOK INTERNATIONAL, LTD., | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW, MOTION FOR REMITTITUR, MOTION FOR A NEW
TRIAL, AND MOTION FOR A STAY OF THE EXECUTION OF THE
JUDGMENT**

**I.      Introduction**

Plaintiff, Melissa Y. Cotton, worked as an hourly employee in the Fold and Pack

Department of Group Athletica, LLC, a division of Reebok International, Ltd. ("Group

Athletica"), in Group Athletica's Indianapolis facility.  Following her termination in

September 2003, Plaintiff filed a Complaint pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII"), alleging that Group Athletica retaliated against her for filing an

EEOC charge of discrimination and that Group Athletica breached a predetermination

settlement agreement.  The court held a jury trial in this matter, which commenced on

November 13, 2006 and concluded on November 15, 2006.  At the close of the evidence,

Group Athletica moved for judgment as a matter of law pursuant to Rule 50 of the

Federal Rules of Civil Procedure.  The court denied its motion, and the case went to the

1

jury.  At the conclusion of jury deliberations, the jury returned a verdict in Plaintiff's favor on her retaliation claim, awarding her ten thousand ($10,000) dollars in compensatory damages and one hundred thousand ($100,000) dollars in punitive damages.  Prior to the jury verdict, the parties stipulated as to back pay in the amount of three thousand eighty-three ($3,083) dollars.

Group Athletica now renews its motion for judgment as a matter of law on grounds that there was insufficient evidence to support the jury's verdict on Plaintiff's claim for retaliation and the jury's award of punitive damages.  Defendant moves for a new trial, for remittitur, and for a stay of the execution of the judgment.  For the reasons set forth below, the court **DENIES** its post-trial motions.

## II.      Renewed Motion for Judgment as a Matter of Law

### A.      Rule 50 Standard

The standard governing a Rule 50 motion is essentially the same as that employed in evaluating a motion for summary judgment.  *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  The court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed . . ."  *Mathur v. Board of Trustees of S. Ill. Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (citations omitted).  Unlike a summary judgment motion, however, the court need not address the Plaintiff's prima facie case.  *Id*. at 942.

2

Instead, the court must assess whether a "rational jury could have concluded" that Plaintiff was retaliated against for filing an EEOC charge of discrimination. *Id.*

### B.     Plaintiff's Retaliation Claim

At trial, Plaintiff presented sufficient evidence from which a rational trier of fact could conclude that Plaintiff was retaliated against for filing an EEOC charge of discrimination complaining of sexual harassment.  Plaintiff filed her charge of discrimination on July 16, 2003, and was fired on August 25, 2003, for violating Group Athletica's attendance policy.  Although she settled the charge of discrimination on August 13, 2003, Plaintiff presented evidence that Group Athletica's management-level employees were hostile toward her.  For example, Plaintiff testified that when she went to pick up her settlement check from Sherry Hedge, Director of Human Resources, she said, "And why did you go to the EEOC?"  Plaintiff testified that Hedge's body language and her tone of voice exuded anger at Plaintiff for filing the EEOC charge of discrimination. Plaintiff also testified that soon after she was transferred to the first shift (July 21, 2003), Jason Dove, Assistant Manager in the Fold and Pack Department, called her into his office and said, in the presence of a team leader, "Don't think you got on first shift because of the EEOC and the sexual harassment, don't think that's the reason you got on first shift."

In addition, the timing of Plaintiff's termination provided circumstantial evidence of a causal connection between Plaintiff's termination and the filing of her EEOC charge of discrimination.  Indeed, Plaintiff was terminated just five weeks after complaining of

sexual harassment and just five days after she picked up her settlement check.

The most compelling evidence in support of Plaintiff's case was Group Athletica's attendance records[1] for the month of August 2003.  According to Group Athletica, the occurrences that triggered Plaintiff's termination were an absence on Monday, August 11, 2003, followed by a tardy on August 12, 13, 14, and 15, 2003.  Group Athletica also claimed that Plaintiff was tardy the following Monday, August 18, 2003, and absent Tuesday, August 19, 2003.  Plaintiff testified that after she was moved to the first shift, she was never tardy for work, and was absent on two occasions, both of which were excused by Group Athletica.  In order to succeed at trial, Plaintiff had to put forth evidence from which a rational jury could find that Group Athletica's records were fabricated in order to justify its decision to terminate her.

During direct examination at trial, Dove testified that based on his reconciliation of the shift rosters with the punch detail, Plaintiff was not tardy for work on August 12, 13, or 14, 2003.  Hedge, however, represented to the EEOC that Plaintiff was  tardy on August 12, 13, 14, 2003.  As Dove and Hedge had a hand in the decision to terminate Plaintiff, this conflict in the evidence was material.  Although Dove changed his testimony on re-direct, the jury was free to make a credibility determination that Dove's change in testimony was evidence that Group Athletica failed to properly apply its

---

[1] Group Athletica tracks attendance based on the final punch detail that is verified by department managers.  Jason Dove, the assistant manager in the fold and pack department, was responsible for reconciling the punch detail with the shift rosters in the fold and pack department.  The shift rosters show an employee's scheduled time to work.

attendance policy to Plaintiff.

The shift rosters for the weeks of August 11-15 and August 18-22, 2003, contained handwritten markings and writings that a rational juror could interpret as having been altered. For example, during the week of August 11-15, 2003, the shift roster reads that Plaintiff was scheduled to work on August 12, 2003, from 6:00 a.m. to 3:30 p.m. Plaintiff clocked out at 3:32 p.m. However, a slash mark was put through Plaintiff's ending time and a "4" was written over the original ending time, as though Plaintiff's ending time was 4:00 p.m. rather than 3:30 p.m. Moreover, Plaintiff put forth evidence that her attendance history had been altered (Plaintiff's Ex. 45). Plaintiff received a performance warning in January 2003 showing that she had four (4) attendance occurrences at that time. However, Plaintiff's attendance history showed that she had at least seven (7) attendance occurrences as of the date she received her attendance warning. A rational jury could conclude that Group Athletica added attendance occurrences to alter the appearance of Plaintiff's attendance history.

Group Athletica also failed to produce weekly spreadsheets reflecting the number of absences for each employee and the attendance policy "step"[2] for each employee. A rational jury could infer that Group Athletica did not produce these documents because they were favorable to Plaintiff.

Viewing the totality of the evidence in the light most favorable to Plaintiff, a

---

[2] The disciplinary steps related to attendance were: Step One (verbal counseling), Step Two (written warning), Step Three (suspension), and Step Four (termination of employment).

rational jury could conclude that Group Athletica altered the attendance records after-the fact to justify its decision to unlawfully terminate Plaintiff because she filed a charge of discrimination with the EEOC for sexual harassment.

### C.    Plaintiff's Punitive Damages Award

An award of punitive damages is available under Title VII "when a plaintiff demonstrates that the defendant engaged in intentional discrimination 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.' 42 U.S.C. § 1981a(b)(1)." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001). In *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999), the Supreme Court provided a three-part framework for determining whether an award of punitive damages was proper under that statutory standard. First, a plaintiff must prove that the employer acted with the requisite mental state. This requires a finding that the employer acted with the knowledge that its actions may violate the employee's rights under federal law. *Id*. at 857. Second, the plaintiff must prove that a basis exists for imputing liability to the employer. Accordingly, a plaintiff must demonstrate that the employees who discriminated against her are managerial agents acting within the scope of their employment. *Id*. at 858. Third, even if the plaintiff establishes the first two elements cited above, an employer cannot be held liable for punitive damages if it made a good faith effort to implement and enforce an anti-discrimination policy. *Id*. at 858-59.

Group Athletica takes issue with the third element, and contends that Plaintiff presented insufficient evidence to show that it did not make a good faith effort to

implement an anti-discrimination policy, and that Plaintiff failed to "rebut [Group Athletica's] proof that it implemented such a policy, trained its personnel on the implementation and enforcement of the policy, regularly enforced its policy . . ., and consulted counsel in determining whether termination of the Plaintiff was within the law." (Defendant's Motion at 4).

The court finds Plaintiff presented sufficient evidence from which a reasonable jury could conclude that Group Athletica did not engage in a good faith effort to comply with Title VII.  Although Group Athletica produced evidence of its anti-discrimination policy and that it educated its employees regarding the same, Plaintiff introduced evidence at trial suggesting that Group Athletica's claim that Plaintiff exceeded the number of attendance occurrences was false and that Company records were altered to reflect that false claim.  If the jury accepted this evidence, which the verdict suggests that it did, then the jury could rationally have concluded that Group Athletica did not make a good faith effort to comply with Title VII, despite the fact that it had in place a formal anti-discrimination policy.  *See id.* at 861 (evidence of a sham investigation designed to discredit the plaintiff was sufficient to defeat defendant's Rule 50 motion with respect to punitive damages); *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483 (evidence that defendant engaged in a cover-up rather than a good faith investigation into plaintiff's retaliatory discharge claim sufficient to warrant punitive damages).

## III.    Motion for New Trial

A party is entitled to a new trial under Rule 59 of the Federal Rules of Civil

Procedure if (1) the verdict is against the weight of the evidence, (2) the damages were

excessive, or (3) for other reasons, the trial was not fair to the moving party.  *Kapelanski*

*v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citing *EEOC v. Century Broad. Corp.*, 957

F.2d 1446, 1460 (7th Cir. 1992)).  Group Athletica seeks relief under Rule 59 on grounds

that the court admitted irrelevant evidence which prejudiced its substantial rights, and that

the verdict was against the weight of the evidence.

### A.    Admission of Plaintiff's June 2003 Absences

Group Athletica contends that it was harmful error for the court to allow the

admission of Plaintiff's June 2003 absences, thus warranting a new trial.  "A harmful

error results on if the error had a 'substantial and injurious effect or influence' on the

jury's verdict.'" *U.S. v. Hanson*, 994 F.2d 403, 407 (7th Cir. 1993); *see also Shick v.*

*Illinois Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002) ("A court should only

grant a new trial if the improperly admitted evidence had a substantial influence over the

jury, and the result reached was inconsistent with substantial justice.").

Prior to trial, Group Athletica moved in limine to exclude Plaintiff's June 2003

absences because those particular absences were addressed in the predetermination

settlement agreement reached on August 13, 2003, which resolved her June 16, 2003

EEOC charge of discrimination for sexual harassment.  The predetermination settlement

agreement addressed her June 2003 absences, paid her for the days she was absent, and

removed references of her three-day suspension from her personnel file.  Plaintiff entered

into and signed the agreement without the aid of counsel and testified that she believed

that the agreement removed all documents and disciplinary notices related to her personnel file.

In denying Group Athletica's motion, the court reasoned that since Group Athletica allegedly terminated Plaintiff for excessive absences, Plaintiff was entitled to rebut that claim by admitting evidence concerning all of her absences. Thus, the June 2003 absences were relevant to Plaintiff's claims of retaliation and breach of the predetermination settlement agreement.

To the extent the inclusion of this evidence was error, it was harmless. The jury heard evidence regarding the predetermination settlement agreement and, therefore, had knowledge of the terms of the agreement. The jury was free to give the June 2003 absences the weight it felt appropriate in assessing her claims.

### B.    Weight of the Evidence

Group Athletica also contends that the court should order a new trial because the verdict rendered was against the weight of the evidence. In support of Group Athletica's motion, it incorporates its arguments with respect to its Rule 50 motion. For the reasons stated in Section II of this opinion, the court finds that the motion should be denied.

### III.    Motion for Remittitur or for a New Trial

Alternatively, Group Athletica moves for remittitur of the jury's award of compensatory and punitive damages or for a new trial limited to damages. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 739 (7th Cir. 2004); *Pincas v. Pabst Brewing Co.*, 893 F.2d 1544, 1554-55 (7th Cir. 1990).

9

A.     **Compensatory Damages**

In determining whether a compensatory damage award is excessive, a court considers whether the award is (1) monstrously excessive; (2) rationally related to the evidence presented in the case; and (3) roughly comparable to awards in similar cases. *David v. Caterpillar*, 324 F.3d 851, 864 (7th Cir. 2003); *see also Deloughery v. City of Chicago*, 422 F.3d 611, 619 n.4 (7th Cir. 2005) (explaining that the first factor is no more than a vague recitation of the second).  As mentioned earlier, the jury awarded Plaintiff $10,000 in compensatory damages for the emotional pain and suffering she endured as a result of her termination.

The court finds Plaintiff's compensatory damages award was neither excessive nor irrational.  Plaintiff testified that she was deeply upset after losing her job with Group Athletica.  Plaintiff buttressed this testimony by explaining that after Group Athletica terminated her, security guards accompanied her to her work area while she gathered her belongings and escorted her out of the facility, and that she was embarrassed and humiliated by the same.  Plaintiff also testified that she lived with her mother and young daughter.  Because she was financially responsible for them, she feared for their financial welfare.  Plaintiff's mother, Nola Cotton, testified that after Plaintiff's termination, Plaintiff had diarrhea, headaches, and often broke down in tears.  Although Plaintiff did not seek medical treatment following her termination, "medical support is not necessary to prove emotional injury in a Title VII case."  *See Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006).

10

Group Athletica's comparison of the decision in *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1229 (7th Cir. 1995), to the present case does not change the court's opinion. In *Avitia*, the plaintiff was fired from his thirteen-year position with the Metropolitan Club of Chicago after he complained that he was statutorily entitled to overtime pay. *Id.* at 1223-24. In finding the $21,000 compensatory damages award excessive, the Seventh Circuit reasoned that the plaintiff's testimony only reflected that he was upset after losing his job. "[I]t is not implausible that [Plaintiff] should have been deeply upset at losing a job he had held for so many years; but the deep upset had to be proved, and it was not." *Id.* at 1229. The Court therefore concluded that a remittitur of $10,500 was "necessary to keep the award of these damages within the limits of the rational." *Id.* at 1230.

As shown above, Plaintiff did prove her entitlement to compensatory damages through her own testimony as well as her mother's. Moreover, the plaintiff's award in *Avitia* was more than what Plaintiff received in this case, and *Avitia* was decided over ten years ago. Accordingly, the court finds, in its discretion, that $10,000 in compensatory damages is "within the limits of the rational."

**B.   Punitive Damages**

In determining whether a punitive damage award is excessive, the court considers three "guideposts": (1) "the degree of reprehensibility of the defendant's conduct"; (2) any disparity between the harm suffered by the plaintiff and the award of punitive damages; and (3) any difference between the punitive damage award and the civil

11

penalties authorized in comparable cases. *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Here, Plaintiff's total award ($10,000 in compensatory damages and $100,000 in punitive damages) is below the statutory cap, *see* 42 U.S.C. § 1981a(b)(3)(D), and therefore, is entitled to deference. *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 486 (7th Cir. 2003) (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746 , 755 (7th Cir. 2002) (internal quotation marks omitted)) ("[W]e will not normally disturb an award of damages in a Title VII case at or under the statutory cap, as this decision is largely within the province of the jury.").

Group Athletica contends that the award of $100,000 in this case is excessive and inappropriate when compared to the facts and circumstances in *Farfaras, supra*. In *Farfaras*, the jury awarded the plaintiff $100,000 in punitive damages on her sexual harassment suit against her former employer and three individual defendants. Although the facts and circumstances at issue in *Farfaras* were more egregious than those presented at Plaintiff's trial, the $100,000 figure in *Farfaras* was assessed against the three individual defendants, not the defendant bank. Put in that context, $100,000 is a hefty sum. Moreover, comparisons to other cases, while helpful, are not dispositive. *Id*. at 567.

In short, and as previously stated, Plaintiff presented evidence from which a rational jury could have concluded that Group Athletica doctored its attendance documentation to make it appear as though Plaintiff incurred the maximum number of attendance occurrences, thus warranting her dismissal. Viewing the evidence in this light,

12

Group Athletica's conduct was reprehensible and harmed the Plaintiff. The court

therefore finds that the $100,000 punitive damages award against Group Athletica, a

division of Reebok International, Ltd., is not so overly excessive as to warrant judicial

intervention in the form of remittitur.

**IV.    Motion to Stay the Execution of the Judgment**

Group Athletica requests a stay of the execution of the judgment in this case

pursuant to Rule 62(b) of the Federal Rules of Civil Procedure. Essentially, Group

Athletica seeks relief from paying on the judgment while the court considers its post-trial

Rule 50 and 59 motions. As the court has so ruled, Group Athletica's motion is moot.

**VI.    Conclusion**

For the reasons set forth above, the court **DENIES** Defendant's Renewed Motion

for Judgment as a Matter of Law, Motion for Remittitur, Motion for a New Trial, and

**DENIES AS MOOT** Defendant's Motion for a Stay of the Execution of the Judgment

(Docket # 112).


**SO ORDERED** this 8th day of February 2007.


_____

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Ellen E. Boshkoff

BAKER & DANIELS
ellen.boshkoff@bakerd.com

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Susan W. Kline
BAKER & DANIELS
swkline@bakerd.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com